UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Balfour Beatty Rail, Inc.,

    Plaintiff,

vs.                                                     Case No.  3:06-cv-551-J-20MCR

Vincent V. Vaccarello and Charles B. Byers,

    Defendants.
_____/

## **O R D E R**

**THIS CAUSE** is before the Court on Defendants' Amended Motion to Compel (Doc. 41) filed February 28, 2007.  Plaintiff filed a response in opposition to this motion on March 14, 2007 (Doc. 43) and the undersigned conducted a telephonic hearing on March 20, 2007.  Accordingly, the matter is now ripe for judicial review.

## **I. BACKGROUND**

On June 19, 2006, Plaintiff filed a Complaint alleging Defendants, Vincent Vaccarello and Charles Byers, former employees of Plaintiff, conspired and undertook to damage Plaintiff's computers and to destroy information stored on the computers; to steal Plaintiff's equipment; and to set up a competing enterprise staffed by Plaintiff's employees to serve Plaintiff's customers.  (Doc. 1).  Plaintiff alleges this conduct occurred while Defendants were still employed with Plaintiff and shortly thereafter.  Id.

Plaintiff is a Wisconsin corporation with its headquarters in Jacksonville, Florida. It provides various services to the railroad industry throughout the United States.  (Doc.

-1-

43, p.2). Defendants are former employees of Plaintiff's Vegetation Department. Plaintiff is a subsidiary of Balfour PLC, a multi-national corporation based in the United Kingdom. Defendant Vaccarello alleges that while he was still employed by Plaintiff, in April 2005, he attended a business conference in the U.K. During the conference, Vaccarello claims he attended a dinner and was seated at the same table as the C.E.O. of Balfour PLC, Ian Tyler. Vaccarello also claims that during this conference, he met privately with the Group Managing Director of Balfour PLC, Andy Rose.

Additionally, Vaccarello alleges that in March 2006, he attended another meeting in the U.K. This time, Vaccarello claims he and another employee of Plaintiff, along with two client representatives met with Mr. Tyler for approximately one hour. Thereafter, Vaccarello claims he met privately with Mr. Tyler for an additional ten minutes. (Doc. 41, ¶8). Vaccarello states that during the ten-minute meeting with Mr. Tyler, the two men discussed plans for Balfour Beatty Rail, Inc. and for Defendant Vaccarello. (Doc. 41, ¶9). Furthermore, Vaccarello claims that during the April 2005 conference, both Mr. Tyler and Mr. Rose acknowledged that there were "existing and ongoing problems in regard to the management of Plaintiff that were limiting and likely would continue to limit business growth and client development at Balfour Beatty in the future." (Doc. 41, ¶10).

Defendants contend the statements by Mr. Tyler and Mr. Rose support their position that business losses allegedly suffered by Plaintiff were not the result of any conduct on the part of Defendants but rather were a "continuation of ongoing problems within Balfour Beatty" or could have been mitigated by Balfour Beatty. (Doc. 41, ¶13). Accordingly, Defendants now want to take the depositions of Mr. Tyler and Mr. Rose.

Plaintiff opposes these depositions and therefore, Defendants filed the instant motion to compel.

## II. **DISCUSSION**

Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court. See Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984). The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party. See Westrope, 730 F.2d at 731.

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. See United States v. Proctor & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983 (1958). Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion requiring judicial intervention. Furthermore, "[d]iscovery in this district should be practiced with a spirit of cooperation and civility." Middle District Discovery (2001) at 1.

In the instant motion, Defendants ask the Court to order Plaintiff to make Messrs. Tyler and Rose available for deposition. Defendants claim they need to depose Messrs. Tyler and Rose to determine whether the men will acknowledge their alleged statements to Vaccarello. Defendants also believe the men have knowledge of documents which relate to the statements made by them during the course of their meetings with Vaccarello. Defendants contend they cannot obtain this information

-3-

through any other means[1] or through the depositions of other individuals, as no other individuals were present during the conversations. Defendants believe they have the right to test the statements made by Messrs. Tyler and Rose to see if any refreshing of their recollection may occur.

Plaintiff responds that the deponents are top executives with Balfour Beatty PLC, a multi-national corporation with over 27,000 employees worldwide. Plaintiff also points out that there are seven levels of corporate hierarchy between Plaintiff and Balfour Beatty PLC. As such, Plaintiff claims neither Mr. Rose nor Mr. Tyler receive any information about the subsidiary companies directly but rather through "various reports that have percolated through numerous levels of hierarchy." (Doc. 43, p.4). Plaintiff points to the case, Salter v. Upjohn Co., 593 F.2d 649 (5th Cir. 1979), for the proposition that Defendants may not depose top executives until they have first deposed all lower level employees who may be able to provide the same information. Plaintiff claims that because Mr. Tyler and Mr. Rose only learned any information about the Vegetation Division of Balfour Beatty Rail, Inc. from other lower level individuals, Defendants should be required to depose those individuals first. Defendants respond that because no other individuals were present for the alleged conversations, no other lower level employees may be deposed regarding the conversations.[2]

---

[1] During the hearing, the Court asked counsel for Defendants whether written discovery would be sufficient to allow Defendants to obtain the information they need. Counsel responded that written discovery, prepared by an attorney would not be sufficient and would instead, be much the same as the sworn statements already provided.

[2] During the hearing, the Court asked counsel for Defendants whether it intended to simply
(continued...)

The Court agrees with Defendants that as to the conversations, Salter, is inapplicable. No other employees were present during the conversations and therefore, no other employees could be questioned. Additionally, assuming the conversations happened, the deponents would obviously have first-hand knowledge of them. Accordingly, the Court finds that with respect to the conversations, it is not necessary for Defendants to show that they have attempted to depose all lower level employees who may be able to provide the same information before deposing Messrs. Tyler and Rose. With respect to whether Plaintiff was actually experiencing business problems, counsel for Defendants stated that he is in the process of obtaining discovery regarding that as well. The Court, however, is not satisfied Defendants have questioned all other employees with information regarding Plaintiff's business and therefore, will not allow Defendants to depose Messrs. Tyler and Rose regarding whether Plaintiff was actually experiencing business problems.

Plaintiff also points out that Defendants' claims regarding the alleged conversations are unsworn, vague allegations, while Plaintiff has provided sworn statements from both Mr. Tyler and Mr. Rose showing that neither recalls any of the alleged statements and neither is aware of any documents recording any conversation with Vaccarello. Accordingly, Plaintiff takes the position that it would be a waste of time and resources to allow the depositions to go forward. In response, Defendants argue

---

[2](...continued)
show that the deponents said Plaintiff was experiencing business problems or try to present evidence showing that Plaintiff was actually suffering from problems. Counsel responded that it intended to show both and that as far as showing actual problems, Defendants were gathering documents and deposing other individuals in an effort to do so.

that they should be permitted to test the recollections of the deponents rather than simply accepting their sworn statements.

The Court finds Defendants' argument that they should be permitted to test the claims of Messrs. Tyler and Rose very compelling. "The reason why alleged lack of knowledge is not a sufficient ground to prevent a deposition is obvious. The very purpose of the deposition discovery is to test the extent of the deponent's knowledge and claims of ignorance." Kuwait Airways Corp. v. American Security Bank, N.A., 1987 WL 11994, *2 (D.D.C. 1987) (citing, Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 122 (D. Conn. 1974)). The ability to test may be even more compelling in the instant case where the deponents' sworn statements indicate they cannot recall the alleged conversations and there is no indication in the statements as to whether the deponents attempted to refresh their recollections. See Travelers Rental Co., Inc. v. Ford Motor Co., 116 F.R.D. 140, 143 (D. Mass. 1987).

In short, the Court believes Defendants do have the right to test the statements made by the deponents regarding their recollections of the alleged conversations. See also, Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp., 203 F.R.D. 98, 102 (S.D.N.Y. 2001) ("[e]ven where, as in this case, a high-ranking corporate officer denies personal knowledge of the issues at hand, this 'claim . . . is subject to testing by the examining party'") (quoting, Consolidated Rail Corp. v. Primary Industries Corp., 1993 WL 364471 at *1 (S.D.N.Y. 1993)).

With respect to the argument that Defendants only support their claim with vague assertions, the Court finds this is not sufficient to prevent the depositions. The

assertions by Defendant Vaccarello are specific as to the dates and topics of the conversations.  The Court is not aware of and Plaintiff has not pointed to any requirement that a party must prepare a statement under oath before being permitted to depose a high-ranking official.  The Court is satisfied that the proposed testimony from the deponents is relevant to the alleged damages claimed by Plaintiff.  As such, the Court will not prevent the depositions on the grounds of the sworn statements provided by the deponents or on the lack of sworn statements provided by Defendant Vaccarello.

Finally, Plaintiff points to the four circumstances in which federal courts have prohibited depositions of high-ranking executives: (1) where the executive possesses no unique personal knowledge of the subject matter of the litigation; (2) where the information may be obtained from lower level employees; (3) where the information sought is available through other forms of discovery; and (4) where subjecting the executive to a deposition would create severe hardship for the corporate party or its executives.  Plaintiff says all four of these circumstances are present here.  The Court does not agree.

As for the first two factors, the Court believes that assuming the conversations occurred, the deponents would have unique personal knowledge of them and as no other individuals were present, no lower level employees could provide information regarding the conversations.  As for the third factor, the Court agrees with Defendants that written discovery would not sufficiently allow them to test the recollections of the deponents and therefore, no other form of discovery is available.  Finally, the Court must determine whether permitting the depositions would create severe hardship for the

corporate party or its executives. During the hearing, the Court asked counsel for Defendants how long it believed the depositions of Messrs. Tyler and Rose would last if the Court limited the depositions to questions regarding the alleged conversations. Counsel responded that he believed the depositions would each last less than an hour. The Court then asked counsel for Plaintiff how depositions of such a length would cause a severe hardship for Plaintiff or the deponents. Counsel responded that traveling to the U.K. would create a tremendous burden for Plaintiff with little or no benefit to the Defendants. Additionally, counsel believed that the deponents would be placed under a severe hardship because they would be required to take time out of their busy schedules to prepare for the depositions.

The Court is not persuaded that there exists sufficient hardship to warrant the drastic remedy of preventing discovery. Salter, 593 F.2d at 651 (holding it is "very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such order would likely be in error"). As an initial matter, "'[h]ighly-placed executives are not immune from discovery[, and] the fact that [an executive] has a busy schedule' cannot shield that witness from being deposed." Six West Retail Acquisition Inc., 203 F.R.D. at 102 (quoting, Consolidated Rail Corp., 1993 WL 364471 at *1) (internal citations omitted). The Court is certain counsel for Defendants will work closely and cooperatively with counsel for Plaintiff to ensure the depositions are scheduled during a time and at a place that is convenient for the deponents. Although counsel for Plaintiff believes the time spent preparing the deponents will be burdensome, the fact that the deponents have already provided

sworn statements should mean that they have spent some time thinking about this matter and should not require too much additional time preparing for the depositions. This is especially true in light of the Court's ruling that counsel for Defendants may only question the deponents about their alleged conversations with Mr. Vaccarello.

The Court is likewise not persuaded by Plaintiff's claims that traveling to the U.K. for these depositions would be a severe hardship on Plaintiff. Plaintiff is a corporation rather than an individual. In reviewing the docket, the Court notes that neither side has been hesitant to vigorously litigate this case and incur legal costs. The Court believes the attorneys in this case will take all necessary steps to ensure that these depositions are conducted in the most efficient and economical manner.

As for Plaintiff's claim that the depositions are simply a waste of time because no benefit will arise from them, the Court cannot agree. At this time, neither the Court nor the parties know what the deponents will or will not recall upon questioning by counsel for Defendants. As pointed out previously in this Order, the sworn statements of the deponents do not provide any information as to what, if any, steps they undertook to refresh their recollection regarding the conversations.

In sum, the undersigned finds Defendants have sufficiently shown that the deponents may have relevant information regarding Plaintiff's claims in this case. Similarly, the Court believes Plaintiff has failed to show the existence of good cause sufficient to justify the entry of a protective order preventing these depositions.

Accordingly, after due consideration, it is

**ORDERED**:

Defendants' Amended Motion to Compel (Doc. 41) is **GRANTED**. The parties are directed to meet an confer within five (5) days after the date of this Order to discuss the scheduling of these depositions. The Court is confident the attorneys will be able to make appropriate arrangements for these depositions without further rulings from the Court, however, if it is necessary, the Court will assist in making arrangements for the depositions.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  20th  day of March, 2007.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record